Mr. Joseph, we're ready to proceed as soon as you can be ready. Thank you, Your Honor. Welcome back. Thank you for seeing me again. Since the last time you were here, we have the unusual experience of having the advocates analogize this event to the common citizen. And in case we forgot, you've done it again. But that relates to merits. Isn't this case about procedure? Yes, it is. I mean, we've consented that the patent issue that was decided by this court is binding on this case because it's the same patent. There is still a pending petition for reconsideration. We're re-hearing on bond. Wasn't the trade dress issue equally decided in the prior litigation? No, it wasn't. It wasn't decided. There was a judgment that ruled on the trade infringement claim. So it sounds to me like it was decided. We have a judgment rejecting the trade infringement claim. That's a ruling on the merits. Actually, it wasn't on the merits, Your Honor. Totally. Well, a dismissal for failure of proof is an adjudication on the merits, I would suggest to you. Well, Your Honor, if I could discuss the collateral establishment regarding the trade dress. That's the only issue before us, isn't it? Yes, I do want to... The trademark issue fell out of the case. You can see that the patent issue is precluded by the earlier case. So all we have left is trade dress. That's exactly why I asked you whether trade dress wasn't also disposed of in the earlier cases. You seem to be insisting that it wasn't. I don't understand how you can make the argument that the trade dress claim wasn't rejected in the earlier litigation in front of Judge Breeden, I guess it is. Yes. Let me address that. Under the Ninth Circuit standards for collateral estoppel established by Claim v. McCabe, which I believe this Court has to apply the Ninth Circuit standard, there are three criteria that the Ninth Circuit has ruled on. One... The issue has to have been litigated. You're quite right. I'm suggesting to you that it was litigated. And you are responding to why one should conclude that it actually wasn't litigated, that there was no merits determination after all. Well, we were precluded because of the discovery rule from admitting our trade dress survey. So, because of that... So, whether one has no evidence or chooses not to use it or is barred by an order of the Court, when the claim is rejected for lack of adequate evidence, that looks to me like, under any of those three scenarios, that is an adjudication on the merits. Well, it is an adjudication on the merits. I'll certainly... Then why doesn't that meet the legal test? And then what's your argument? I don't think it's fair to apply the discovery rule to this other case for several reasons. First of all, the products in those two cases are different. Trade dress is different from the patent issue. In the Brookstone case, Brookstone introduced its own garage mat, which had different characteristics than the auto care garage mat. And the issues of trade dress are different in those two cases. Yes, but both products were involved in the earlier case. Yes, that's true. The one that Brookstone made and the one that auto care made. And therefore, when the trade dress claim in its entirety was rejected by Judge Reed in the earlier case, that was a ruling, I would suggest, that covered the auto care produced mat, not just the Brookstone produced mat, with respect to trade dress infringement. I believe that under the case that I cited in the Ninth Circuit, number one, the issue must be identical. I don't think the issues in the two cases are identical. The issue is identical if both the Brookstone and the auto care products were the subject of Judge Reed's trade infringement ruling. It seems to be undeniable that that was so. Both products were in evidence and were part of the claim, and Judge Reed ruled on the claim. How can you say it was a different issue? Maybe similar, but different. It's precisely the same issue involving the same claim and the same product. Where's the difference? Well, let me shift gears a little bit. I think it's fundamentally unfair to apply the ruling that Judge Reed had, barring the introduction of the trade dress survey, to another case. Was there a survey that you sought to introduce in the earlier case? And the judge said, no, you can't introduce this survey? The judge prohibited us from introducing the survey. You actually had a survey that you tried to admit. No, we didn't try to admit it because the judge wouldn't allow us to. So he ruled that we could not introduce such a survey. In the summary judgment opposition, in the present action, as I understand it, you did not proffer the survey as evidence to resist summary judgment. Is that correct? Well, it would— There's no answer. Either it was evidence that was attached to your opposition, the summary judgment, or it wasn't. It wasn't because the survey involved a different subject matter. We would have conducted a separate survey in the auto care case. But auto care was involved in the Brookstone case. It was one of the products involved. It wasn't the end. And maybe it wasn't the only thing that was in, but if it's in, it's in. We treated it as if it wasn't in that case. It was in that case. All right. I'd like to address one other issue, Your Honor. It's the obviousness issue. The Supreme Court just heard argument last week in case our international versus teleplex. You went after the patents issue, and you indicated the patents issue was decided. Well, it's not—as I understand it, it's not ultimately decided until the petition for re-hearing is denied, at which point we could petition the Supreme Court for a view as well. Okay? So, what I'm saying is, what I'd like this Court to do— So, you're adding to your petition for re-hearing in the other case right now? I mean, if you want to consider it that. I think that this Court should await a decision in the KSR ruling from the Supreme Court before it decides. You mean, maybe until June? Well, I don't think it will be until June, but it might be until June. It might be March. But I think that the Supreme Court's ruling on the obviousness issue would reflect on this case and the— Did this raise the motivation to combine references issue? I think so. Your Honor, I'd like to reserve the mic. Can I just say Judge Reed ruled that there was insufficient evidence of motivation to combine, and that was his basis for deciding the obviousness issue before him? It is hard for me to say what the basis for Judge Reed's ruling on obviousness was, other than his conclusion that it was obvious. All right. I'd like to reserve my remaining time. Thank you. Thank you, Mr. Joseph. Mr. Rands. Thank you, Your Honor. May it please the Court, my name is Douglas Rands. I'm with the law firm, Rands Health, Arthur and Petty in Greenland, Nevada. I'm here on behalf of Auto Care Products, Incorporated. Would you address right away here the argument that Mr. Joseph made, that whatever the technical requirements of the collateral estoppel, it is an equitable doctrine. And he argues that it's unduly harsh, unfair, unreasonable, unwise, etc. to visit on every subsequent lawsuit the sanction for the discovery of use that led to the exclusion of his survey evidence in lawsuit number one. If he has a point about that, then maybe there's something for us to worry about. And if he doesn't, then it seems like the requirements of collateral estoppel are met. So it seems to me you should address that head on. Well, he didn't have a full and fair opportunity to have a survey of you, but you're saying it was his fault. It was his fault. It was the discovery of use. How was it his fault? He went before the magistrate judge in the underlying action. The magistrate judge said that because he took the list of customers from Brookstone and sent out basically a request that they join him in a class action lawsuit against Brookstone for fraud. It was a survey, not a fraud infringement, but a survey to try to collect plaintiffs in a lawsuit. Because he did that, he was precluded from, that he had to turn in the list, or was supposed to turn in the list of customers from Brookstone. Let me ask you this quick. Is there any case you can cite to us where discovery of use sanction in case number one resulted in the claim being rejected in subsequent cases so that the sanction, in effect, continues through a whole series of cases? I certainly can't, as I stand here today, cite you to a specific case. I believe the Dana case said that he had to show that remote calls were known. He was precluded from using evidence. He didn't do that. I believe that's analogous. I don't have a case specifically on the point of. It depends, perhaps, on what the phrase no fault of his own encompasses. Exactly. We're going back to the standard of proof in this case, which is abuse of discretion. Did Judge McKibben abuse of discretion to affirm or grant summary judgment in this case based upon collateral estoppable of Judge Reed's decision? Judge Reed did disallow him, in the underlying case, from bringing in a survey. He didn't disallow him from introducing other evidence that would support the trade dress case. In fact, in Judge Reed's first decision on this case, where he was dealing with a request for a preliminary injunction, and it's attached to my brief as number 049 under tab 12, Judge Reed went through the hearing and showed that he had not only taken a survey, but he had reviewed and viewed the car pad mat versus the park smart mat, not just the car pad mat with the Brookstone knockoff of the car pad mat, but the park smart mat, which was manufactured by my client, and went through a significant evaluation of that. He had that evidence in front of him when he made the decision on the trade dress. We don't know from Judge Reed's decision exactly what went on in his mind as he was discussing the trade dress issue, but we do know that he granted summary judgment in the underlying case. Have you ever seen a report of the survey that Mr. Joseph keeps alluding to? Judge Reed, in some of his decisions, or some of his papers, said that he doesn't even know if the survey was ever – I have never seen it, no. It was not attached as an exhibit to the summary judgment motion in the underlying case. It certainly wasn't attached to the brief. It wasn't part of any discovery. It wasn't part of any discovery. And this summary judgment motion was made to the court in front of Judge McKibben after discovery was completed in the case. So I don't understand. How could the judge reject something that was never proper to offer to him? Did he actually reject a survey then? No. He told the plaintiff that he was not going to allow him to – he had to turn in the evidence of the survey – not the evidence of the survey, but I'm sorry, the customer list as a sanction. He was required to turn that in, and the magistrate judge said he would not allow the survey to be proper to the court in the underlying case. How about what happened in front of Judge McKibben? As I recall, he asked the other side to provide authority on why he shouldn't follow Judge Reed's decision in the present case. And as I recall, no submission at all was made by either side. Is that right? I don't recall any submission ever being made by either side. So then if I'm Judge McKibben at that point, could I not have said, I'm taking it as conceded by the other side, since they didn't even file a brief for any evidence, that they agree with me that I should be following Judge Reed's adjudication of the trade press infringement issue? Absolutely. Why did he do that? I don't know. Are we bound to simply rely on the analysis that Judge McKibben actually used and articulated? Under appellate standards, you may be bound on what he actually articulated, but he did, in fact, articulate that he was following, through the collateral estoppel rules, that he was following Judge Reed's decision, Judge Reed's decision in the underlying case, which was the exact same product. That seems to be on the merits of collateral estoppel, not the merits of the underlying claim, but the merits of collateral estoppel. I'm asking if there wasn't a fatal default by Mr. Joseph that itself would have justified Judge McKibben in applying collateral estoppel, because when he asked for reasons why he shouldn't, they gave him zero. I never was aware of any reasons given, so I would agree with the Court. You were there. I think my mother was part of the underlying action. Anything further? Unless there are any questions, I'll submit. All right. Thank you, sir. Mr. Joseph, do you have some rebuttal? I actually don't have any rebuttal, Your Honor. All right. Well, we have the position for both sides in the briefs, and we will conduct and take the case under review. Thank you all. The Honorable Court is adjourned until this afternoon, 2 p.m. Thank you.